IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JENNIFER DANDRIDGE | * | |
| | * | |
| v. | * | Civil Action No. JKS 14-2333 |
| | * | |
| SELF STORAGE SERVICES, INC. | * | |
| | * | |

## MEMORANDUM OPINION

Presently pending are Defendant's motion for summary judgment on Count I of Plaintiff's amended complaint, ECF No. 38, and Defendant's motion to dismiss Counts II through V of the complaint, ECF No. 18.[1]  The issues have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons set forth below, Defendant's motions will be granted.

## 1.  Background.

Plaintiff, Jennifer Dandridge, filed suit against Defendant, Self Storage Services, Inc., alleging racial discrimination in violation of 42 U.S.C. § 1981 (Count I), retaliation in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e) (Counts II and III), fraud (Count IV), and breach of contract (Count V).  ECF No. 14-1 at 9-27.

Plaintiff was employed by Defendant from 1998 to July 16, 2014.  ECF No. 14-1 ¶ 6. During the final four years, Plaintiff was the manager of two of Defendant's facilities: Waldorf Self Storage and Affordable Self Storage.  On June 24, 2010, the parties entered into an agreement allowing Plaintiff to live in an apartment on Defendant's property, located at 3150 Leonardtown Road, Waldorf, Maryland 20601.  *Id.* at ¶ 77.  The agreement stated that "[a] resident apartment, rent free will be made available to you.  The comparative pretax value of this

---

[1] Plaintiff argues that Defendant's failure to seek summary judgment on the remaining four claims means that these claims must go forward.  However, Defendant's motion to dismiss these claims remains viable.

benefit is $12,000 annually . . . ."  *Id.*  Plaintiff lived in this apartment during her four years as a manager for Defendant.  *Id.* at ¶ 16.  On July 16, 2014, Defendant terminated Plaintiff's employment.  *Id.* at ¶ 9.  On July 18, 2014, Mr. Daniel Stanton, Defendant's Vice President of Operations and Plaintiff's supervisor, issued a termination letter to Plaintiff, stating that she was terminated for (1) offering rental rate discounts and move-in discounts that were not authorized by the corporate office; (2) amassing an unacceptably high accounts receivable figure; and (3) selling automobiles on the facility's property despite being informed by Mr. Richard Moran, Defendant's president, that this practice was unacceptable.  Defendant's Exhibit 12.

Plaintiff continued to live in the apartment after her termination and, on August 22, 2014, Defendant filed a wrongful detainer action against Plaintiff in the Charles County District Court, alleging that Plaintiff owed Defendant $1,000 per month in rent during her occupancy of the premise, $800 in attorney's fees, and $543.90 per week for costs incurred to house the replacement manager at the Comfort Suites Waldorf.  *Id.* at ¶ 46.  The court dismissed the wrongful detainer action on September 4, 2014, reasoning that a wrongful detainer action was the wrong procedural vehicle by which to remove Plaintiff from the apartment, that Defendant needed to give Plaintiff a 30-day notice to quit, and that the correct action was a holdover tenant action.[2]  *Id.* at ¶ 35.

## 2.  <u>Standard of Review.</u>

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a test of the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the

---

[2] This court will adopt the District Court's reasoning for purposes of resolving this motion, namely, that Defendant should have initiated a tenant holding over action pursuant to MD. CODE ANN., REAL PROP. § 8-402 if it wanted to remove Plaintiff from the apartment.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff may not,

however, rely on naked assertions, speculation, or legal conclusions.  *Bell Atl. v. Twombly*, 550

U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all

well-pled factual allegations in the complaint as true and construe them in the light most

favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after

viewing the complaint in this light the court cannot infer more than "the mere possibility of

misconduct," then the motion should be granted and the complaint dismissed.  *Iqbal*, 556 U.S. at

679.

Summary judgment may be entered only if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th

Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be

resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986);

*JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla

of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314

(4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).  At the same

time, the facts that are presented must be construed in the light most favorable to the party

opposing the motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**3.** <u>**Discussion.**</u>

   **A.  Summary Judgment Motion - Discrimination Claim (Count I).**

     Count I contends that Defendant terminated Plaintiff's employment on the basis of her

race.  A plaintiff may establish a claim for intentional discrimination using two methods.  She

may either demonstrate through direct evidence that her race "motivated the employer's adverse

employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th

Cir. 2004), or she may "proceed under a 'pretext' framework"—commonly referred to as the

*McDonnell Douglas* approach—"under which the employee, after establishing a *prima facie* case

of discrimination, demonstrates that the employer's proffered permissible reason for taking an

adverse employment action is actually pretext for discrimination."  *Id.* at 285.  Direct evidence is

"evidence of conduct or statements that both reflect directly the alleged discriminatory attitude

and that bear on the contested employment decision."  *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d

510, 520 (4th Cir. 2006) (internal marks omitted).  To defeat a motion for summary judgment

using direct evidence, the evidence must show that the employer announced, admitted, or

"otherwise unmistakably indicated" that an impermissible consideration was a determining

factor, or that discrimination can properly be assumed from the circumstances.  *Cline v.

Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir.1982).

     Plaintiff has presented no direct evidence that her employment was terminated based on

her race.[3]  Absent direct evidence, Plaintiff must prove her case circumstantially using the

pretext framework established in *McDonnell Douglas*.  Under this framework, Plaintiff must first

demonstrate a *prima facie* case of discriminatory discharge, which requires Plaintiff to show that:

(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she

---

[3] Plaintiff's opposition to Defendant's summary judgment motion contains many factual assertions supported only by her complaint.  However, reliance on mere allegations in the pleadings will not suffice to defeat summary judgment and are not considered in this opinion.  *Bouchat*, 346 F.3d at 525.

was performing at a level that met her employer's legitimate expectations at the time of the

adverse employment action; and (4) her position was filled by a similarly qualified applicant

outside the protected class.  *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

    **i.  *Prima Facie* Case.**

The parties do not dispute that Plaintiff has satisfied the first two prongs of a *prima facie*

case, but Defendant argues that Plaintiff cannot establish that she was meeting Defendant's

legitimate expectations at the time she was terminated.  ECF No. 38-1 at 31.  To satisfy this

prong, an employee must "demonstrate that he was 'qualified' in the sense that he was doing his

job well enough to rule out the possibility that he was fired for inadequate job performance,

absolute or relative."  *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514-15 (4th Cir. 2006)

(quotations omitted).  Plaintiff argues that her job performance met Defendant's expectations

because she won the facility of the year award in 2010 and in 2013 finished among the top three

out of Defendant's 19 facilities.  ECF No. 42 at 31.  Plaintiff also asserts that, in the four years

that she was a manager for Defendant, she never received an unsatisfactory performance

appraisal or received any indication that she was falling short of Defendant's expectations.[4]  *Id.*

Defendant responds that "positive comments about her job performance in 2013 do not establish

that her performance met Self Storage's legitimate expectations as of July 16, 2014, when her

employment was terminated."  ECF No. 38-1 at 35

While consistently strong performance evaluations and various performance-based

awards may be enough to satisfy this prong, *see Nana-Akua Takyiwaa Shalom v. Payless

Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 485 (D. Md. 2013), the relevant time period

for evaluating the adequacy of an employee's job performance must be close in proximity to the

---

[4] Again, Plaintiff cites no evidence to support these claims, but Defendant appears to accept them so they will be addressed.

time of the actual termination.  *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542,

547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996) ("The 1990 review of 1989

[and the] 1989 bonus . . . are irrelevant because O'Connor was not performing well in August of

1990, the time of termination."); *Diamond v. Bea Maurer, Inc.*, 128 F. App'x 968, 973 (4th Cir.

2005) ("[P]laintiff simply has not demonstrated that her job performance *at the time BMI*

*discharged her*—in November 2002—met BMI's legitimate expectations" because "acceptable

job performance in the past does not establish acceptable job performance at the time of the

termination.") (emphasis in original).  Plaintiff offers nothing more than the two accolades

received in 2010 and 2013 to demonstrate that she satisfied Defendant's legitimate expectations

as of July 2014.  Plaintiff has failed to satisfy the third prong of her *prima facie* case.

### ii.      A Legitimate, Nondiscriminatory Reason for Termination.

Even if Plaintiff had met the third prong of a *prima facie* case,[5] she could not avoid

summary judgment.  The burden then shifts to Defendant to assert a legitimate,

nondiscriminatory reason for Plaintiff's termination.  Defendant offers three reasons for

Plaintiff's termination: she (1) "gave lower Rents and Specials to dozens of customers that the

Company had not approved," (2) "allowed tenants at her facilities to accumulate the Company's

highest level of accounts receivable for a facility not for sale—36.5% of monthly rents—over the

first six months of 2014," and (3) "defied a direct order from the Company's President not to

park and advertise the sale of her Used Car on the front driveway of Self Storage's property."  *Id.*

at 31-32 and cited exhibits.  These are legitimate, non-discriminatory reasons for Plaintiff's

dismissal.  *See Darrikhuma v. Southland Corp.*, 975 F. Supp. 778, 784 (D. Md. 1997) (holding

---

[5] Plaintiff has satisfied her burden of showing that her position was filled by a similarly qualified applicant outside the protected class (the fourth prong) because Defendant appointed Ron Kitmiller, a Caucasian male, as the site manager following Plaintiff's termination.  *See Payless*, 921 F. Supp. 2d at 485 ("There appears to be no dispute that, upon Plaintiff's termination, Payless installed Kevin Campbell, a Caucasian male, as the store manager at the Bowie location," thus "Plaintiff has established a *prima facie* case of discrimination based on race.").

that "failure to comply with the directives" of a superior or ignoring a superior's instructions constitutes a legitimate reason for termination).  Plaintiff, therefore, bears the burden of showing that Defendant's proffered justifications are a pretext for discrimination.

### iii.   Pretext.

#### a.   Rents and Specials.

The parties dispute whether Plaintiff gave unapproved discounts to customers.  Plaintiff claims that she gave discounts using Defendant's "Sitelink" program, which would not allow access to unapproved discounts.  ECF No. 42 at 33.  Plaintiff has produced an affidavit from David Graham, a former manager who left the company in October 2013, which attests that "[a] manager could not go in and over-ride the [Sitelink] system to allow discounts that were not pre-approved by corporate settings."  ECF No. 42 at Ex. 26.

Defendant contends that Plaintiff was instructed *not* to use its "SiteLink" software to find the company-approved rents and specials, but rather to use its site-specific *websites*.  According to Defendant, "[w]hen a manager 'clicked' on the drop down menu for Specials, all Specials would appear on the computer screen," and the program permitted application of any special regardless of whether it was approved for the specific location at issue.  ECF No. 38-1 at Ex. 2 ¶¶ 18, 24, 27-28.  Defendant produces declarations from four managers—Gregory Berg, Joannie Joyner, Richard Parker, and Donna Stickley—all of whom attest that: (1) Defendant instructed them to use the specific website for each location, not the "SiteLink" software, to obtain the current, approved discounts and specials for that location and (2) they knew that the "Sitelink" software did not show whether discounts and specials were approved for a specific unit or location and that it would not reject a special that differed from a company-approved price on the relevant website.  Defendant's Exhibit 14.  Defendant also produces evidence that Plaintiff awarded a "$1 Move in" special to 155 customers in the first seven months of 2014 without

receiving approval to do so.  Defendant's Exhibit 7.

Plaintiff responds, irrelevantly and without evidentiary support, that she "was never written up for giving these specials," "was not told she could not give discounts or specials," and "was not denied access in Sitelink to give these discount[s] at the time of the sale."  ECF No. 42 at 9, 33-34.  She also claims that other managers gave discounts and specials and were not fired, but provides no evidence to support this statement, nor does she allege that any other managers' discounts and specials were given without approval.  *Id.* at 11-12.  Her citation to the Gregory Berg deposition is not paired with the relevant pages from that deposition.  ECF No. 42 at Ex. 9. However, the pages she has provided indicate that Mr. Berg did not offer any specials.  *Id.*

Defendant has provided extensive support for its assertion that managers were not allowed to offer discounts simply because the discounts were accessible on the SiteLink menu. Mr. Graham's vague statement that the SiteLink system could not be overridden to allow discounts not preapproved "by corporate settings" does not create a genuine issue of material fact.  Thus, Plaintiff has produced no evidence which would enable a factfinder to conclude that her offering of unapproved discounts was not an actual reason for her termination.  *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.").

### b.  Accounts Receivable.

Defendant, citing Plaintiff's deposition testimony, also asserts that Plaintiff knew that her accounts receivable were expected to be around 5%, but never more than 10%, of the rent charges for any month.  ECF No. 38-1 at Ex. 15 p. 136.  Four current managers also attested that they understood this expectation.  *Id.* at Ex. 14.  Plaintiff's accounts receivable in 2014 were

between 31%-42% and more than 35% on average.  *Id.* at Ex. 8.  They were higher than all but

one location, which had a rate of 92% to 196%, Ex. 9, because of one large delinquent customer

whose property has no value and is no longer marketed as a self storage facility.  Ex. 2 at ¶ 49.

Plaintiff contends that the true gauge for accounts receivable was whether there were

tenants over 90 days late in delinquency at the end of the month.  ECF No. 42 at 44.  Plaintiff

points to the parameters of the "Facility of the Year Award," which state: "If there are zero

dollars reported on the Management Summary in the 91-120 Receivables column on the last day

of the month, 2 points will be awarded."  Plaintiff's Exhibit 29.  Plaintiff also notes an email

written by Dan Stanton, stating that "if you have an amount in the 61-90 category or later, we

need to get this cleaned up this month," with an attached list of unpaid charges for 17 of

Defendant's storage locations.  Plaintiff's Exhibits 23 and 24.  Defendant responds that these

numbers are irrelevant because Plaintiff's overall receivable number, not a subset of that number,

was the reason for the termination.

Here, again, Plaintiff fails to rebut Defendant's justification for terminating her

employment.  The fact that Defendant rewards an employee with zero 90-day-receivables does

not establish that Defendant permits high overall receivable rates, nor does it establish that

Defendant would not fire a white manager for allowing too many delinquent payments.  In sum,

Plaintiff does not dispute that her accounts receivable over the first six months of 2014 were

significantly higher than the documented acceptable range and higher than all but one explained

rate.  This serves as a legitimate and actual reason for terminating her employment.

### c.   Selling a Used Car on Defendant's Property.

Finally, the parties dispute the legitimacy of Defendant's citation to Plaintiff's attempt to

sell a used car on Defendant's premises.  Plaintiff does not dispute that she parked a car with a

"for sale" sign in front of her building, but denies that Mr. Moran told her to move the car and

asserts that two white managers, Greg Berg and Henrietta Ison, have routinely sold cars on Defendant's property and have not been terminated for such conduct.  ECF No. 42 at 48-49. Defendant responds that Mr. Berg and Ms. Ison did not place such cars "in the front driveway of [Defendant's] site, directly underneath the Company's marquee sign, in the parking space reserved for the Company's rental truck."  *See* ECF No. 38-1 at ¶¶ 41-47.  With regard to Mr. Berg, Defendant emphasizes his testimony that he always received permission from Mr. Stanton before selling used cars on Defendant's property, and never parked used cars underneath the facility's sign, in place of the facility's rental truck.  Defendant's Exhibit 14 at 6.  Defendant also claims that Plaintiff mischaracterizes this reason for her termination; that it was not the selling of the car, but rather that Plaintiff "placed her personal interests in selling the Used Car above the business interests of Self Storage" by using the parking space under the company sign contrary to the directions of the company's President.  ECF No. 38-1 at 34 n.2.  However, the termination letter only references the fact of the sale.  Nevertheless, because the termination letter makes it clear that the basis for the termination was the performance of Plaintiff's facilities rather than the car sale, the court need not consider the facts related to the car sale.

In sum, Plaintiff fails to show that she was meeting her employer's expectations and alternatively fails to present evidence to show that the proferred legitimate reasons for her termination are pretextual.  Therefore, Defendant's motion for summary judgment as to Count I is granted.

### B.  Motion to Dismiss.

### i.  Retaliation Claims (Counts II and III).

Plaintiff alleges that Defendant unlawfully retaliated against her, in violation of 42 U.S.C. § 1981 (employment discrimination) and 42 U.S.C. § 2000(e) (Title VII), by filing an unlawful detainer action against her less than a month after she filed her discrimination lawsuit.  ECF No.

14-1 at ¶ 45.  "A prima facie case of retaliation requires that the plaintiff show: 1) that [she] engaged in a protected activity; 2) that the employer took adverse employment action; and 3) that a causal connection existed between the protected activity and the adverse action."  *Middleton v. Frito-Lay, Inc.*, 68 F. Supp. 2d 665, 671-72 (D. Md. 1999).  "Title VII's anti-retaliation provision covers 'employer actions that would have been materially adverse to a reasonable employee' or, stated differently . . . it covers actions that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Hall v. Greystar Mgmt. Servs., L.P.*, 28 F. Supp. 3d 490, 495 (D. Md. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  548 U.S. at 67.

There is no dispute that Plaintiff engaged in protected activity by filing her discrimination complaint.  At issue is whether Defendant's filing of the incorrect action to remove Plaintiff from the apartment constitutes an "adverse employment action" that "could well dissuade" a reasonable employee from making a charge of discrimination.

The parties agree that Defendant provided Plaintiff with an apartment pursuant to her employment contract, that Defendant terminated Plaintiff's employment on July 16, 2014, and that Plaintiff continued to live in the apartment after her employment was terminated.  Plaintiff argues that Defendant intentionally filed a wrongful detainer action instead of a tenant holding over action because the former action (1) does not allow Plaintiff to file a counterclaim or recover attorneys' fees and (2) does not require Defendant to possess a Certificate of Occupancy showing that it was licensed to rent the apartment.  ECF No. 24 at 12 ¶ 53.  Even assuming that Plaintiff's speculation as to Defendant's purpose is correct, these are tactical, not discriminatory, reasons.

In any event, once Plaintiff's employment was terminated, Defendant was entitled to file

11

an action to remove her from the apartment, and the fact that that action turned out to be improper is irrelevant.  In *Hall*, the plaintiff brought a retaliation claim[6] because, after she filed a charge of discrimination, her employer took her property to a landfill instead of following her instructions to transport it to a nearby portable storage unit.  *Id.* at 494.  The court concluded that the disposal of the property could not constitute retaliation because the plaintiff had no legal interest in it.  *Id.* at 495.  Similarly, here, Plaintiff's right to possess the apartment ended when her employment ended.  Defendant's action was nothing more than an attempt to remove Plaintiff from an apartment that she no longer had a right to possess.

In addition, Plaintiff has failed to show that she suffered an injury or harm.  In *Deal v. Newport Datsun Ltd.*, 706 F.2d 141 (4th Cir. 1983), the plaintiffs refused to move on the basis that the defendant landlord's refusal to renew their lease was retaliatory.  When the landlord filed an unlawful detainer proceeding, the tenants filed a federal civil rights action seeking to enjoin prosecution of the unlawful detainer proceeding.  *Id.* at 142.  The court rejected the retaliation claim, concluding that the plaintiffs had "been deprived of nothing" because "[t]he commencement of the proceeding without interference with the tenants' possession of their property or their right of possession of the leasehold . . . infringed no right of theirs."  *Id.*  Here, too, Plaintiff suffered no harm from the wrongful detainer action because it never deprived her of possession of the property.  Plaintiff's retaliation claims under Counts II and III are thus insufficient as a matter of law.[7]

---

[6] The alleged retaliation in *Hall* occurred under the Fair Housing Act, which has the same elements as retaliation under Title VII. 28 F. Supp. 3d at 495.

[7] Count III is subject to dismissal for an alternative reason.  It is brought under Title VII, rather than Section 1981, and Plaintiff has failed to allege the "receipt of, or at least entitlement to, a right-to-sue letter," which "is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint."  *Davis v. North Carolina Dep't of Corrections*, 48 F.3d 134, 140 (4th Cir. 1995).  "[W]here neither the complaint nor the amended complaint alleges that the plaintiff has complied with [this prerequisite], the plaintiff has not properly invoked the court's jurisdiction under Title VII."  *Id.* (citation and quotation marks omitted).

Plaintiff opposes the motion to dismiss on the basis that a Title VII plaintiff need not exhaust her administrative remedy

ii.      **Fraud Claim (Count IV).**

Pursuant to Plaintiff's employment agreement, she was provided with an apartment "rent free" and the "comparative pretax value of this benefit [was] $12,000 annually." ECF No. 24 at 30. Plaintiff claims that Defendant made a false misrepresentation when it claimed that the apartment was valued at $12,000 because Defendant never obtained a Certificate of Occupancy for the apartment as required by law. ECF No. 24 at 31. Defendant responds that Plaintiff cannot recover on her fraud claim because she never paid any rent to Defendant and thus has not suffered a compensable injury. ECF No. 25 at 4.

"In order to state a claim for common law fraud in Maryland, a plaintiff must allege (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (citation omitted). A plaintiff must prove each of the elements of fraud by clear and convincing evidence. *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704 (1998).

Plaintiff has not asserted a *prima facie* fraud claim because she has failed to show that she suffered an injury. Even if Defendant did not have the legal right to rent the apartment, Plaintiff never paid rent and thus never suffered a compensable injury. A party's "willingness to

---

on a retaliation claim. However, that is true only when the underlying discrimination claim has been exhausted and the claim of retaliation grows out of the same allegations. *See*, e.g. *Jones v. Calvert Group, Inc.*, 551 F.3d 297, 301-02 (4th Cir. 2009). Here, in contrast, Plaintiff does not allege that she exhausted the underlying discrimination claim. Under these circumstances, *Jones* does not apply. Because Plaintiff has not alleged that she possesses or was entitled to a right to sue letter at the time the original and amended complaints were filed, Plaintiff has not fully exhausted her administrative prerequisites, and this court lacks subject matter jurisdiction to hear Plaintiff's Title VII claim. *Perkins v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, Civ. No. DKC 08-3340, 2010 WL 889673, at *3-5 (D. Md. Mar. 5, 2010); *Lumpkins v. Washington Metro. Area Transit Auth.*, Civ. No. AW 09-1753, 2010 WL 445466, at *3 (D. Md. Jan. 29, 2010).

receive a benefit while ignoring [a] contract's deficiencies [i]s not without significance." *Julian v. Buonassissi*, 414 Md. 641, 672 (2010). In *Hudson v. Maryland State Hous. Co.*, 207 Md. 320 (1955), Hudson fell behind in his housing payments, faced foreclosure, and demanded rescission of the two contracts he executed with a real estate corporation, claiming that he was not provided with a signed copy of the first contract, in violation of statutory requirements. *Id.* at 330. The court noted that Hudson "received the benefit of the use and occupancy of [a] house for about a year and a half after the execution of the first contract," and concluded that Hudson could not "repudiate the contract and recover all of his payments and thus have the house rent-free for the period of his occupancy, whatever his rights might have been at any earlier stage." *Id.* Similarly, in *Citaramanis v. Hallowell*, 328 Md. 142 (1992), the plaintiffs learned that their rental unit was not licensed as rental property and sought restitution of eighteen months rent based on the defendant's misrepresentation regarding the failure to license. *Id.* at 145, 149. The court had to determine "whether a tenant who brings a private action under the [Maryland Consumer Protection Act (MCPA)] may be awarded restitution of rent paid for an unlicensed dwelling upon proving lack of licensure alone." *Id.* at 147. The court, noting that a plaintiff must prove actual "injury or loss sustained" under the MCPA and that "the tenants ha[d] received everything that they bargained for," concluded that the tenants failed to show an actual loss or injury resulting from the failure to license. *Id.* at 151, 157-59. Plaintiff contends that *Citaramanis* is inapposite because it involved a claim under the MCPA, not a common law fraud claim, but the issue nevertheless is whether Plaintiff suffered an actual injury as a result of a misrepresentation. Plaintiff has failed to allege any actual harm and thus has no fraud claim.

###### iii.      Breach of Contract Claim.

Plaintiff's employment contract states: "If you choose to enroll in the group health insurance plan, Self Storage Services, Inc. shall contribute $200 a month towards your monthly premium."  ECF No. 24 at 34.  Plaintiff alleges that Defendant breached her employment contract when it failed to pay the $200 employer portion of her health insurance premiums.  ECF No. 24 at 34.  Defendant contends that this claim fails because Plaintiff's complaint does not allege that she actually chose to enroll in the group health insurance plan.  ECF No. 18-1 at 13.

"[A] complaint alleging a breach of contract must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant."  *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010) (citation and quotations omitted).  Here, because there is no allegation that Plaintiff enrolled in the group insurance plan, Defendant's obligation to contribute to Plaintiff's plan never materialized.  Plaintiff's breach of contract claim fails as a matter of law.[8]

## 4. <u>Conclusion.</u>

The Court will grant Defendant's motion for summary judgment and motion to dismiss.


Date:      5/7/2015                                                              /S/
                                                                        Jillyn K. Schulze
                                                                United States Magistrate Judge

---

[8] Defendant's motion to dismiss also claims that Plaintiff's omission is not inadvertent because Plaintiff in fact did not join the company's group health plan.  Plaintiff does not refute this in either her response to the motion to dismiss or in her response to the summary judgment motion.